BRYANT S. DELGADILLO (CA Bar No. 208361)
bryant.delgadillo@piblaw.com
PARKER IBRAHIM & BERG LLP
3070 Bristol Street, Suite 660
Costa Mesa, CA 92626
Tel: (714) 361.9550
Fax: (714) 784.4190

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HEINNICKEL, JR.,<br><br>        Plaintiff<br><br>v.<br><br>NETWORK CAPITAL FUNDING CORPORATION, a Nevada Corporation; JPMORGAN CHASE BANK, N.A., a National Association; and DOES 1-20, Inclusive,<br><br>        Defendants. | **CASE NO.:**<br><br>**NOTICE OF REMOVAL OF STATE COURT ACTION UNDER 28 U.S.C. §§ 1331, 1332(A) AND 1441(a)-(C)**<br><br>[Request for Judicial Notice filed concurrently herewith]<br><br>[Superior Court of the State of California for the County of Santa Clara, Case No. 22CV403725]<br><br>Original State Court Action Filed: August 26, 2022 (Original Complaint Never Served on Any Defendant)<br><br>Amended State Court Complaint Filed: November 25, 2024<br>Amended Complaint Personally Served on December 6, 2024 |

PARKER IBRAHIM & BERG LLC
COSTA MESA

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that defendant, JPMorgan Chase Bank, N.A. ("Chase"), respectfully submits this notice of removal ("Notice of Removal"), pursuant to 28 U.S.C. §§ 1331, 1332 and 1441 to remove the above captioned matter from the Superior Court of the State of California for the County of Santa Clara, in which the case is now pending, to the United States District Court for the Northern District of California, which is the judicial district in which the property in dispute is located. In support thereof, Chase states as follows:

## I.   PROCEDURAL COMPLIANCE

1.     Plaintiff John Heinnickel, Jr. ("Plaintiff") filed an action in the Superior Court of the State of California, County of Santa Clara, styled, *John Heinnickel, Jr. v. Network Capital Funding Corporation; JPMorgan Chase Bank, N.A.; Federal Home Loan Mortgage Corporation aka Freddie Mac; Unisource National Lender Services West, LLC; and All persons unknown claiming any legal or equitable right, title, estate, lien or interest in the Property adverse to Plaintiff's title, or any cloud on Plaintiff's title to the Property and; and Does 1-20, inclusive*, Case No. 22CV403725, on August 26, 2022 (the "State Court Action" or "Original Complaint").

2.     Plaintiff never served the Original Complaint on any defendant including Chase.

3.     On November 25, 2024, Plaintiff filed a First Amended Complaint ("FAC") in the State Court action against only Chase and defendant Network Capital Funding Corporation ("Network Capital").

4.     Chase was served with the FAC on December 6, 2024 via personal service of the FAC and summons on Chase's agent for service, CT Corporation Systems.

5.      This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(3) because it is filed within thirty days of the matter becoming removable, including time

PARKER IBRAHIM & BERG LLC
COSTA MESA

NOTICE OF REMOVAL OF STATE COURT ACTION UNDER 28 U.S.C. §§ 1331, 1332(A) AND 1441(A)-(C)

periods provided under Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure.

6. For removal purposes, the effective date of service is determined by state law. *See City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005). Here, as discussed above, Chase was never served with the Original Complaint but was personally served with the summons and FAC on December 6, 2024. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351-356 (1999) (holding that the 30-day period runs from the date of formal service of the complaint).

7. True and correct copies of the state court docket, Original Complaint, summons, FAC, and civil case cover sheet are attached hereto as **Exhibit A** pursuant to 28 U.S.C. § 1446(a).

8. Chase will give written notice of the filing of this Notice of Removal to Plaintiff, and will file a copy of this Notice of Removal with the Superior Court of the State of California for the County of Santa Clara, as required by 28 U.S.C. § 1446(d).

9. Payment of the appropriate fees and costs for removal and docketing of this matter in federal court, if any, are tendered with this Notice.

10. Chase expressly reserves its right to raise all defenses and objections to Plaintiff's claims after the action is removed to the above-entitled District Court. By filing this Notice of Removal, Chase does not waive any defenses that may be available to it.

<strong><u>VENUE</u></strong>

11. Venue is proper in the United States District Court, Northern District of California, pursuant to 28 U.S.C. §§ 1391, 1441(a), and 1452(a) as the State Court Action was filed in the Santa Clara County Superior Court.

## II.    <u>REMOVAL TO THE DISTRICT COURT IS PROPER</u>

12. The above-described State Court Action is a civil action over which this Court has original jurisdiction under the provisions of 28 U.S.C. section 1332(a).

PARKER IBRAHIM & BERG LLC
COSTA MESA

Pursuant to 28 U.S.C. sections 1441(a) and (b) and the procedures set forth in 28 U.S.C. section 1446, Chase may remove the State Court Action to this Court.

13. In addition, section 1332(a) provides the district courts with "original jurisdiction" over matters based on diversity of citizenship. Section 1441(a) states any civil action brought in state court where the district courts have original jurisdiction may be removed. Section 1441(b) sets the parameters for removing under diversity jurisdiction.

### A. Federal Question

14. This action is removable by Chase pursuant to 28 U.S.C. § 1446(a). A case is removable from state to federal court if the action could have originally commenced in federal court. 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction in actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The propriety of removal is determined at the time the petition for removal is filed by reference to the plaintiff's complaint in state court. *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914).

15. In the instant action, in the first cause of action, Plaintiff asserts a claim for damages for failure to rescind and cancel an instrument. *See* FAC at ¶¶ 18-28. In this cause of action, Plaintiff expressly seeks relief pursuant to various federal statutes and regulations, including the Truth in Lending Act ("TILA"). *See Id.* at ¶¶ 19, 27. Plaintiff's cause of action for damages for a violation of TILA supports removal of this action to federal court under 28 U.S.C. § 1331.

16. When an action originally filed in state court is removed to federal court, the federal tribunal has jurisdiction to determine not only the federal claims but all pendent state claims which "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). Accordingly, this Court has supplemental jurisdiction over the remaining cause of action alleged in the FAC, which is a state law claim.

## B. Diversity of Citizenship

17. In addition to federal question removal, removal to federal court is proper based upon diversity jurisdiction as explained below.

18. The above-described State Court Action is a civil action over which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332(a). Pursuant to 28 U.S.C. §§ 1441(a) and (b) and the procedures set forth in 28 U.S.C. § 1446, Chase may remove the State Court Action to this Court.

19. Section 1332(a) provides the district courts with "original jurisdiction" over matters based on diversity of citizenship. Section 1441(a) states that any civil action brought in state court where the district courts have original jurisdiction may be removed. Section 1441(b) sets the parameters for removing under diversity jurisdiction.

### a. Citizenship

20. In the FAC, Plaintiff is seeking damages in connection with a refinance loan he obtained in 2022, which was secured by real property located at 293 Monroe St., Santa Clara, California 950500 (the "Property"). *See* FAC, ¶¶ 1, 8-13.

21. In addition, Plaintiff alleges that he is the owner of the Property. *Id.*, ¶ 1. Based on these allegations, Plaintiff has resided and has been domiciled in the State of California since at least 2022 and, by every indication, has the intent to remain. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must . . . be domiciled within the State."); *see also Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."); *Heinz v. Havelock*, 757 F. Supp. 1076, 1079 (C.D. Cal. 1991) (residence and property ownership is a factor in domicile for diversity jurisdiction); *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("Residence alone is not the equivalent

PARKER IBRAHIM & BERG LLC
COSTA MESA

**NOTICE OF REMOVAL OF STATE COURT ACTION UNDER 28 U.S.C. §§ 1331, 1332(A) AND 1441(A)-(C)**

of citizenship, but the place of residence is *prima facie* the domicile.") (emphasis in original). Accordingly, Plaintiff is a citizen of California for purposes of diversity.

22. Chase is a national banking association and a wholly-owned subsidiary of JPMorgan Chase & Co. Chase is a citizen of the State of Ohio because its main office is located in that state. *See Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 708 (9th Cir. 2014) (holding that a national bank is a citizen only of the state in which its main office is located as designated in the bank's articles of association). Chase's Articles of Association designate its main office and headquarters as its Columbus, Ohio office. *See* Request for Judicial Notice ("RJN"), Exh. 1 (JPMorgan Chase Bank, National Association, Articles of Association) ("The main office of the Association shall be in the City of Columbus, County of Delaware, State of Ohio."); *see also Hope v. U.S. Bank NA*, No. 12-CV-00297-PHX-FJM, 2012 WL 1292464, at *1 (D. Ariz. Apr. 16, 2012) (Chase's main office is located in the State of Ohio). Thus, Chase is diverse from Plaintiff.

23. Upon information and belief, Defendant Network Capital is a mortgage lending company organized under Nevada law, with its corporate headquarters in Miami, Florida. FAC, ¶2. *See also* RJN, Exh. 2 (Nevada Secretary of State Business Entity Detail). To determine citizenship for purposes of diversity jurisdiction, "a corporation is typically a citizen of two states for determining the existence of diversity jurisdiction: the state of incorporation and the state in which it has its principal place of business." *Breitman v. May Co. Cal.*, 37 F.3d 562, 564 (9th Cir. 1994) (*citing* 28 U.S.C. § 1332(c)(1)). For purposes of diversity jurisdiction, Network Capital should therefore be considered a citizen of either Nevada or Florida.

24. The remaining defendants are named as "Doe" defendants, and as such, are disregarded in determining the existence of diversity. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

25. Based on the foregoing, there is complete diversity sufficient to support

**NOTICE OF REMOVAL OF STATE COURT ACTION UNDER 28 U.S.C. §§ 1331, 1332(A) AND 1441(A)-(C)**

removal.

**b.     Amount in Controversy**

26.    This matter also exceeds the amount in controversy threshold requirement of $75,000 found in 28 U.S.C. § 1332(a). Among other things, Plaintiff purports to have cancelled the loan he entered into with Network Capital in 2022 in the principal amount of $202,500 (the "Loan"), but Network Capital refused to rescind the transaction. *See* FAC, ¶¶ 8-13. Among other relief sought, Plaintiff seeks an order voiding and canceling the deed of trust recorded January 25, 2022 with the Santa Clara County Clerk Recorder as Document No. 25225381. *See* FAC at 9:11-12.

27.    Where the crux of the litigation involves property rights, it is the property value or loan amount that determines the amount in controversy. *See Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028-29 (N.D. Cal. 2010) (collecting wrongful foreclosure cases, noting "[n]umerous courts have held that, where a complaint seeks to invalidate a loan secured by a deed of trust, the amount in controversy is the loan amount"). As discussed above, Plaintiff seeks to invalidate his $202,500 Loan originated by Network Capital, which is secured by a deed of trust. *See* FAC, ¶¶ 8-13. Thus, more than the jurisdictional threshold of $75,000 is in controversy.

28.    In *Garfinkle v. Wells Fargo Bank,* 483 F.2d 1074, 1076 (9th Cir. 1973), the court determined the amount in controversy was satisfied by using either the indebtedness owed by the plaintiff on the loan secured by the property or the fair market value of the property. Here, pursuant to the Notice of Trustee's Sale attached as an exhibit to the RJN, the indebtedness owed by the Plaintiff on the loan secured by the Property was estimated to be $210,554.05 as of December 13, 2022. *See* RJN, Exh. 3.

29.    Additionally, the "amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute or contract." *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). Although Chase denies

PARKER IBRAHIM & BERG LLC
COSTA MESA

**NOTICE OF REMOVAL OF STATE COURT ACTION UNDER 28 U.S.C. §§ 1331, 1332(A) AND 1441(A)-(C)**

that Plaintiff is entitled to any damages or attorneys' fees, Plaintiff has prayed for the recovery of both attorneys' fees and costs of suit, as well as damages. *See* FAC at pp. 9-10.

30. Including these figures in the amount in controversy calculation further establishes the value of the relief sought by Plaintiff in this matter exceeds $75,000.

31. As set forth above, based on Plaintiff's allegations, the controlling legal authority, the Loan amount, the value of the Property, and the amount of Plaintiff's default, it is clear the amount in controversy exceeds the $75,000 threshold requirement.

## III. <u>CONSENT OF REMOVAL</u>

32. No consent to the removal is necessary as to defendant Network Capital because it does not appear that this party has been formally served with the Summons and FAC (or the Original Complaint) based on a review of the information available for the State Court's docket.

33. No consent is necessary as to remaining Doe defendants 1 through 20 since it does not appear any Doe defendants have been named or served.

## IV. <u>CONCLUSION</u>

Wherefore, Chase respectfully requests that this Court make any and all orders necessary to effect the removal of this case from the Superior Court for the State of California, County of Santa Clara, to this Court for all further proceedings.

DATED:  January 6, 2025                    PARKER IBRAHIM & BERG LLP


By:  */s/ Bryant S. Delgadillo*
       BRYANT S. DELGADILLO
       Attorneys for  Defendant
       JPMORGAN CHASE BANK, N.A.

PARKER IBRAHIM & BERG LLC
COSTA MESA

# EXHIBIT A

# 22CV403725

🖨 Print

## John Heinnickel, Jr. vs Network Capital Funding Corporation et al

### Case Information

**Case Type:** Breach of Contract/Warranty Unlimited (06)
**Case Number:** 22CV403725
**Filing Date:** 8/26/2022
**Case Status:** Active
**Court Location:** Civil

# PARTIES

Show All entries

Search:

| ▲ Type | First Name | Middle Name | Last Name |
|---|---|---|---|
| Defendant | | | Network Capital Funding Corporation |
| Defendant | | | JPMorgan Chase Bank |
| Defendant | | | Federal Home Loan Mortgage Corporation |
| Defendant | | | Unisource National Lender Services West, LLC |
| Plaintiff | John | | Heinnickel |

Showing 1 to 5 of 5 entries

Previous | 1 | Next

## Attorneys

Show All entries

Search:

| ▲ Representing | First Name | Middle Name | Last Name |
|---|---|---|---|
| **John Heinnickel** | **Timothy** | **A.** | **Pupach** |

Showing 1 to 1 of 1 entries

Previous | 1 | Next

# EVENTS

Show All entries

Search:

| ▼ File Date | File Type | Filed By | Comment | Documents |
|---|---|---|---|---|
| 11/25/2024 | Amended Complaint Filed - No Fee | John Heinnickel, | FAC; ATTY: Pupach | 📄 |

| File Date | File Type | Filed By | Comment | Documents |
|---|---|---|---|---|
| 8/26/2022 | New Filed Case | | | |
| 8/26/2022 | Summons: Issued/Filed | John Heinnickel, | | |
| 8/26/2022 | Civil Case Cover Sheet | John Heinnickel, | | |
| 8/26/2022 | Complaint (Unlimited) (Fee Applies) | John Heinnickel, | | |

Showing 1 to 5 of 5 entries

Previous | 1 | Next

## HEARINGS

Show All entries

Search: 

| Department | Type | ▾ Date | Time | Result |
|---|---|---|---|---|
| Department 18b | Conference: Case Management | 1/14/2025 | 10:00AM | |

Showing 1 to 1 of 1 entries

Previous | 1 | Next

DocuSign Envelope ID: E6A30549-9E72-49FF-885D-7627FDA33EFB

E-FILED
8/26/2022 11:53 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV403725
Reviewed By: M. Dominguez

Timothy A. Pupach, Esq.   SBN 214044
Law Offices of Timothy A. Pupach
3150 Almaden Expressway, Suite 204
San Jose, CA 95118
Tel: 408-971-9445
Fax: 408-971-9444
Email: tim@pupachlaw.com

Attorney for Plaintiff, JOHN HEINNICKEL

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA

22CV403725

| | |
|---|---|
| JOHN HEINNICKEL, JR. | ) Case No. _____ |
| | ) |
|    Plaintiffs | ) **COMPLAINT** |
| | )   **(1) CANCELLATION OF** |
| vs. | )      **INSTRUMENT AND RESCISSION** |
| | )   **(2) TO QUIET TITLE** |
| NETWORK CAPITAL FUNDING | )   **(3) FOR VIOLATION OF** |
| CORPORATION, a Nevada Corporation; | )      **CALIFORNIA BUSINESS AND** |
| JPMORGAN CHASE BANK, a National | )      **PROFESSIONS CODE SECTIONS** |
| Association; FEDERAL HOME LOAN | )      **17200 ET SEQ.** |
| MORTGAGE CORPORATION aka | ) |
| FREDDIE MAC; UNISOURCE NATIONAL | ) |
| LENDER SERVICES WEST, LLC, a Nevada | ) |
| Limited Liability Company; and All persons | ) |
| unknown, claiming any legal or equitable | ) |
| right, title, estate, lien, or interest in the | ) |
| Property adverse to Plaintiff's title, or any | ) |
| cloud on Plaintiff's title to the Property, and | ) |
| DOES 1 through 20, inclusive, | ) |
| | ) |
|      DEFENDANTS. | ) |
| | ) |

TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD
HEREIN:

     Plaintiff hereby allege as follows:

DocuSign Envelope ID: E6A30549-9E72-49FF-885D-7627FDA33EFB

**PARTIES**

1.     Plaintiff JOHN HEINNICKEL, JR. is an individual and owner of the real property located at 293 Monroe St, Santa Clara, California 95050 (Hereinafter, "Property") and more particularly described as follows:

> Lot 146, as shown on that certain Map of Tract No. 1203, which Map was filed for record in the office of the recorder of the County of Santa Clara, State of California, in Book 44 of Maps, page(s) 42 and 43.

> APN: 205-14-001

2. Defendant NETWORK CAPITAL FUNDING CORPORATION, a Nevada Corporation (Hereinafter, "NETWORK CAPITAL") located at 7700 Irvine Center Drive, #300 Irvine, California 92618 is in the business of lending money to borrowers for residential property from 1 to for 4 units in California. NETWORK CAPITAL was the lender at the time of the subject loan on January 17, 2022.

3. Defendant JPMORGAN CHASE BANK, A National Association, (Hereinafter, "CHASE") located at 1111 Polaris Parkway, Columbus, OH 43240 is in the business of lending money to borrowers for residential property from 1 to for 4 units in California. CHASE purchased the subject loan from defendant, NETWORK CAPITAL and began servicing the loan on January 31, 2022.

4. Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION, AKA FREDDIE MAC (Hereinafter, "FREDDIE MAC") located at 8200 Jones Branch Drive, McLean, VA 22102 is in the business of lending money to borrowers for residential property from 1 to for 4 units in California. FREDDIE MAC purchased the subject loan from defendant, CHASE on March 17, 2022.

5. Defendant, UNISOURCE NATIONAL LENDER SERVICES WEST, LLC, a Nevada Limited Liability Company (Hereinafter, "UNISOURCE"), located 2530 Red Hill Ave, #110,

PLAINTIFFS' COMPLAINT

2

DocuSign Envelope ID: E6A30549-9E72-49FF-885D-7627FDA33EFB

Santa Ana, California 92705 is in the business of providing escrow and title services to lenders in residential real estate transactions.

6. Defendants, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the Property adverse to Plaintiff's title, or any cloud on Plaintiff's title to the Property.

7. Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 20 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiffs are informed and believe and based on such information and belief allege that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiff will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

8. Plaintiffs are informed and believe and based on such information and belief allege that Defendants and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as alleged herein.

9. Each of the Defendants named herein are believed to and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

10. Jurisdiction and venue are properly in the County of Santa Clara, California as the property is located there, the contract was entered into there and the Defendants were doing business in the County of Santa Clara, California

## I. INTRODUCTION TO FACTS

DocuSign Envelope ID: E6A30549-9E72-49FF-885D-7627FDA33EFB

11. On or about January 17, 2022 in the city of Santa Clara, County of Santa Clara, California, plaintiff signed loan documents for a refinance of the property wherein Plaintiff was borrower and defendant NETWORK CAPITAL was lender. A true and correct copy of the Deed of Trust recorded on January 25, 2022 as Document No. 25225381 in Santa Clara County records is attached and incorporated in **Exhibit "A"**.

12. The major terms of the loan were as follows:

LOAN NUMBER 02211100146563

Escrow Number UNLS464522

Loan amount $202,500;

180 months term at interest rate of 2.375

$1338 payment per month with principal and interest;

Total payment of $1912.77 per month with impounds included for property taxes and insurance;

Origination points to Defendant NETWORK FINANCIAL $3,981.33;

Title - Settlement Fee to: Defendant UNISOURCE of $395.00 ;

Title - Lender's Title Insurance to UNISOURCE: of $300.00;

Title - Signing Fee to: UNISOURCE of $150.00;

Title - Recording Service Fee to UNISOURCE of $90.00;

Recording Fees to Santa Clara County of $275.00;

Homeowners Insurance Premium of $263.31;

County Property Tax impounded $3,130.40;

Appraisal fee to Core Valuation $720.00;

Per diem interest $146.95; and

Hazard insurance of $526.70.

PLAINTIFFS' COMPLAINT

4

13. Also included in the loan documents was a Notice of a three-day right to cancel the transaction, a true and correct copy of which is attached in **Exhibit "B"**. The cancellation requires a Notice of cancellation before midnight on the third business day after the date of the contract which is 12:00 A.M midnight of January 21, 2022.

14. Plaintiff in fact canceled the transaction in accordance with the Three-Day Right to Cancel on January 20, 2022 at 2:54 P.M. Pacific Standard Time by telegram using the servicer, sendtelegrm.com with tracking no. 941734. A true and correct copy of the confirmation is attached as **Exhibit "C"**. In an abundance of caution, Plaintiff again sent a telegram canceling the transaction on January 20, 2022 at 11:22 P.M. Pacific Standard Time by using the services of International Telegram Company. A true and correct copy of the confirmation of First-Class Telegram Order No. 22551852 is attached and incorporated as **Exhibit "D"**. The contract therefore was canceled twice before 12:00 A.M. Midnight of the third business day. California law provides that cancellation is effective as of the time it is sent by the borrower and not at the time received by the creditor.

15. Despite the cancellation NETWORK CAPITAL proceeded with the refinance and funded the loan on January 24, 2022.

16. The loan was secured by a deed of trust that was recorded as Document No. 25225381 on January 25, 2022 with the Santa Clara County Clerk Recorder.

17. Plaintiff corresponded with NETWORK CAPITAL regarding the cancellation and showed them receipts for the telegram confirmation. NETWORK CAPITAL refused to cancel the transaction claiming that they did not receive the cancellation until after it was funded on January 24, 2022 without any basis or support for such a claim.

18. On or about January 31, 2022 CHASE purchased the refinance loan from NETWORK CAPITAL which changed the servicer to defendant CHASE.

DocuSign Envelope ID: E6A30549-9E72-49FF-885D-7627FDA33EFB

19. On or about March 17, 2022 CHASE sold the loan to FREDDIE MAC and kept CHASE as the servicer.

20. On or about July 5, 2022 CHASE repurchased the loan from FEDDIE MAC and became the servicer and the owner of the loan.

21. CHASE continues to attempt collections on the loan despite notice of the cancellation of the loan.

## FIRST CAUSE OF ACTION FOR CANCELLATION OF INSTRUMENT AND RESCISSION Against All Defendants

22. Plaintiff incorporates and re-alleges Paragraphs 1 through 21 as though fully set forth at length herein.

23. Under The Truth In Lending Act (TILA) there are mandatory disclosures provided to borrowers which include the rights of rescission and cancellation. Here, Plaintiff was properly provided with the disclosure regarding the Three-day Right of Rescission and canceled the transaction and the instrument within the three-day period before midnight on the third day.

24. Plaintiff alleges that he has always had the ability to pay the loan but that he decided after careful evaluation, that the loans terms were not favorable.

25. Plaintiff shall cooperate in all documentation required to refund the loan to NETWORK CAPITAL after rescission of the loan, Note and Deed of Trust.

26. CHASE purchased the loan from NETWORK CAPITAL on January 31, 2022 and was assigned all of the rights and obligations of NETWORK CAPITAL at that time.

27. FREDDIE MAC purchased the loan from CHASE on March 17, 2022 and was assigned all of the rights and obligations of CHASE at that time.

28. As a result of the failure of NETWORK CAPITAL, CHASE and FREDDIE MAC to rescind the loan and cancel the transaction NETWORK CAPITAL, CHASE and FREDDIE

DocuSign Envelope ID: E6A30549-9E72-49FF-885D-7627FDA33EFB

MAC have caused plaintiff to suffer damages to his credit rating as well as monetary damages to be proven at trial at least exceeding $25,000.

29. In addition to monetary damages Plaintiff alleges that the following charges and costs paid in the transaction through UNISOURCE escrow should be refunded to Plaintiff by defendants:

Origination points to Defendant NETWORK FINANCIAL $3,981.33; Title - Settlement Fee to Defendant UNISOURCE of $395.00; Title - Lender's Title Insurance to UNISOURCE of $300.00; Title - Signing Fee to UNISOURCE of $150.00; Title - Recording Service Fee to UNISOURCE of $90.00; Recording Fees to Santa Clara County of $275.00; Homeowners Insurance Premium of $263.31; County Property Tax impounded $3,130.40; Appraisal fee to Core Valuation $720.00; Per diem interest $146.95; and Hazard insurance of $526.70 and all other finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party.

30. Along with cancellation of the loan, the security for the loan, which is that certain deed of trust recorded January 25, 2022 with the Santa Clara County Clerk Recorder as Document No. 25225381 should be void canceled and given no further force or effect.

31. In addition, CHASE and NETWORK CAPITAL, CHASE and FREDDIE MAC should be liable for Plaintiff's costs and attorney fees in accordance with 15 U.S.C. §1640 and Regulation Z, 12 CFR §1026.

32. Plaintiff should also be entitled to punitive damages for NETWORK CAPITAL CHASE and FREDDIE MAC failure to rescind in order to punish and deter such acts in the future.

WHEREFORE, Plaintiff prays for Cancellation of the loan as hereinafter set forth.

PLAINTIFFS' COMPLAINT
7

## SECOND CAUSE OF ACTION TO QUIET TITLE against Defendants NETWORK CAPITAL, CHASE AND FREDDIE MAC

33. Plaintiff incorporates and re-alleges Paragraphs 1 through 32 as though fully set forth at length herein.

34. Plaintiff is the owner of the real property evidenced by the Grant Deed to him recorded on October 13, 2000 as document number 15430142.

35. Plaintiff properly canceled the loan by sending written notice of the transaction within the time periods set forth in the Three-day disclosure at 11:22 P.M. pst on January 20, 2022.

36. Despite the timely cancellation NETWORK CAPITAL refused to cancel the loan and in fact funded the loan on January 24, 2022. CAPITAL NETWORK violated the cancellation and recorded the deed of trust creating a lien on the property to the detriment of Plaintiff.

37. NETWORK CAPITAL's deed of trust assigned to CHASE on January 31, 2022 and assigned to FREDDIE MAC on March 17, 2022, has now put an improper cloud and claim to title adverse to that of Plaintiff's title and must be removed and cleared.

38. NETWORK CAPITAL, CHASE and FREDDIE MAC claims are without any right, and defendants have no right, title, estate, lien, or interest in the Property or any part of it since the loan transaction was canceled and the Deed of Trust is void.

39. Plaintiff seeks to quiet title against all defendants and each of them as of the date Plaintiff canceled the loan on January 20, 2022.

WHEREFORE, plaintiff prays for 1) Judgment quieting title in plaintiff's favor as fee simple owner of the property, 2) that defendants and each of them have no right, title, estate, lien, or interest in the property adverse to plaintiff and 3) that Plaintiff be awarded any

DocuSign Envelope ID: E6A30549-9E72-49FF-885D-7627FDA33EFB

consequential and incidental damages incurred the amount of which is unknown at this time but in excess of $25,000.

## THIRD CAUSE OF ACTION AGAINST NETWORK CAPITAL AND CHASE FOR

## UNFAIR BUSINESS PRACTICES

**(Violation of California Business and Professions Code Sections 17200 et seq.)**

40. Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 37, inclusive, as though fully set forth herein.

41. California Business & Professions Code Section 17200, et seq. prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

42. As more fully described above, NETWORK CAPITAL, CHASE and FREDDIE MAC as assignee's failure to cancel the loan transaction constitute acts and practices that are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date. Specifically, NETWORK CAPITAL engaged in deceptive business practices with respect to mortgage loan servicing and transacting for improper refusal to cancel the instruments in accordance with the Three-day right to Cancellation Disclosure.

43. In addition, NETWORK CAPITAL, and CHASE and FREDDIE MAC by assignment, sought and continue to seek collection from Plaintiff on the loan that are not legally due under California law without any right to do so.

44. Defendants also recorded a canceled instrument, namely, the deed of trust which constitutes executing and recording a false and misleading document.

45. The foregoing acts and practices have caused substantial harm to Plaintiff in that he has been charged amounts that he does owe and have. Defendants have falsely reported missed payments to the credit bureaus which has negatively effected Plaintiff's.

46. As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the defendants NETWORK CAPITAL, and CHASE and FREDDIE MAC by assignment, Plaintiff and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted charges and wrongful liens.

47. If not stopped by the Court NETWORK CAPITAL, and CHASE and FREDDIE MAC by assignment, will be unjustly enriched and should be enjoined from continuing in such practices pursuant to California Business & Professions Code§§ 17203 and 17204.

48. Additionally, Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code §17200 and related sections.

WHEREFORE, Plaintiff prays for judgment as set forth below.

**PRAYER**

WHEREFORE, plaintiff prays for judgment as follows:

1. For an Order Declaring the contract and loan entered into on January 17, 2022 by Plaintiff with NETWORK CAPITAL, and CHASE and FREDDIE MAC by assignment, has been and is rescinded and canceled in accordance with the TILA Disclosure before midnight on the third business day after executing the documents.

2. For an Order voiding and canceling the deed of trust recorded January 25, 2022 with the Santa Clara County Clerk Recorder as Document No. 25225381.

3. For an Order Declaring that Defendants return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the deed of trust.

4. Judgment quieting title in plaintiff's favor as fee simple owner of the property, 2) that defendants and each of them have no right, title, estate, lien, or interest in the property

DocuSign Envelope ID: E6A30549-9E72-49FF-885D-7627FDA33EFB

adverse to plaintiff;

5. An award of all interest as allowed by law on all sums awarded to plaintiff;

6. An award refunding all costs of the loan to Plaintiff, including but not limited to, all other finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the NETWORK CAPITAL, paid directly to a third party, or passed on from the NETWORK CAPITAL to the third party.

7. An award of punitive damages against NETWORK CAPITAL, CHASE and FREDDIE MAC for their failure to rescind;

8. An award of all costs of suit including attorney fees to be paid by defendants to Plaintiff.

Dated: August 23, 2022

DocuSigned by:

**Timothy Pupach**

Timothy A. Pupach, Attorney for Plaintiff, JOHN HEINNICKEL, JR.

PLAINTIFFS' COMPLAINT
11

DocuSign Envelope ID: E6A30549-9E72-49FF-885D-7627FDA33EFB

**VERIFICATION**

I, JOHN HEINNICKEL, JR., am a plaintiff in this action; I have read the foregoing *COMPLAINT FOR CANCELLATION OF INSTRUMENT AND RESCISSION, TO QUIET TITLE AND FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.* and know the contents thereof. The foregoing Complaint is true of my own knowledge, except as to the matters stated in it on my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was made at San Jose, California on this 23rd day of August, 2022

DocuSigned by:

John Heinnickel, Jr.

PLAINTIFFS' COMPLAINT

12

EXHIBIT "A"

**\*\*This document was electronically submitted to Santa Clara County for recording\*\***

**25225381**

**Regina Alcomendras**
Santa Clara County - Clerk-Recorder
01/25/2022 08:11 AM

Recording Requested By:
NETWORK CAPITAL FUNDING CORPORATION,
NMLS#11712

And After Recording Return To:
NETWORK CAPITAL FUNDING
CORPORATION, NMLS#11712
7700 IRVINE CENTER DRIVE, #300
IRVINE, CALIFORNIA 92618
Loan Number: 02211100146563

Titles: 1     Pages: 19
Fees: $154.00
Tax: $0
Total: $154.00

UNLS 464522 ————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

MIN: 100856800005225178

MERS Phone: 888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)   "Security Instrument" means this document, which is dated       JANUARY 17, 2022       , together with all Riders to this document.
(B)   "Borrower" is JOHN C. HEINNICKEL, A SINGLE MAN
BORROWER'S ADDRESS IS 293 Monroe St, Santa Clara, California 95050.

Borrower is the trustor under this Security Instrument.
(C)   "Lender" is NETWORK CAPITAL FUNDING CORPORATION, NMLS#11712

Lender is a                          NEVADA CORPORATION                          organized
and existing under the laws of                          NEVADA
Lender's address is   7700 IRVINE CENTER DRIVE, #300, IRVINE, CALIFORNIA 92618

(D)   "Trustee" is   Orange Coast Title Company
2411 West La Palma Avenue, #300, Anaheim, California 92801

(E)   "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security

Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   JANUARY 17, 2022
The Note states that Borrower owes Lender   TWO HUNDRED TWO THOUSAND FIVE HUNDRED AND
00/100                                         Dollars (U.S. $ 202,500.00         ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
FEBRUARY 1, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider           ☒ Planned Unit Development Rider
☐ Balloon Rider                   ☐ Biweekly Payment Rider
☐ 1-4 Family Rider                ☐ Second Home Rider
☐ Condominium Rider               ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                of                        Santa Clara                        :
   [Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 269-47-154

which currently has the address of        293 Monroe St
                                    [Street]

           Santa Clara               , California     95050     ("Property Address"):
             [City]                                   [Zip Code]

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

      **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

      1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section

15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of

any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage

Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability

under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in

Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____  1/17/2022 _____ (Seal)
John C Heinnickel                              -Borrower

_____          _____
Witness                                   Witness

——————————— [Space Below This Line For Acknowledgment] ———————————

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _CALIFORNIA_ )

County of _Santa Clara_ )

On _1/17/2022_ before me, _CHi NGOc NGUYEN, NOTARY PUBlic_

Date               Here Insert Name and Title of the Notarizing Officer

personally appeared _John C Heinnickel_

Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature of Notary Public

Notary Seal

CHI NGOC NGUYEN
Notary Public - California
Santa Clara County
Commission # 2370222
My Comm. Expires Aug 9, 2025

Loan Originator: Michael Justin Nowak, NMLSR ID 1827349
Loan Originator Organization: Network Capital Funding Corporation, NMLSR ID 11712

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01

☆DocMagic

Page 15 of 15

Loan Number: 02211100146563

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this      17th      day of JANUARY, 2022                                          , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to NETWORK CAPITAL FUNDING CORPORATION, NMLS#11712, A NEVADA CORPORATION (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

293 Monroe St, Santa Clara, California 95050
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

Washington Park
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and

MULTISTATE PUD RIDER - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                                    Page 1 of 3                                    ☆DocMagic

which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ 1/27/2022 (Seal)
John C Heinnickel        -Borrower

Loan Number: 02211100146563

Date: JANUARY 17, 2022

Property Address:   293 Monroe St
                    Santa Clara, California 95050

## EXHIBIT "A"

### LEGAL DESCRIPTION

PARCEL ONE: LOT 1, AS SHOWN ON THAT CERTAIN MAP ENTITLED "TRACT NO. 7503" WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON JUNE 07, 1984 IN BOOK 530 OF MAPS AT PAGE(S) 4 AND 6. PARCEL TWO: AN EXCLUSIVE BASEMENT FOR PARKING PURPOSES AS TO THAT PORTION OF LOT 6, OF THE AMENDED MAP OF TRACT NO. 7503, WHICH MAP WAS FILED FOR RECORD ON JUNE 7, 1984 IN BOOK 630 OF MAPS, AT PAGES 4 AND 5, SANTA CLARA COUNTY RECORDS, DESIGNATED AS 1A, E.C.A.

A.P.N. #: 269-47-154

EXHIBIT "B"

# NOTICE OF RIGHT TO CANCEL

Loan Number: 02211100146563

Borrowers:  John C Heinnickel

Property Address:  293 Monroe St, Santa Clara, California 95050

---

## YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage, lien or security interest on or in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is  JANUARY 17, 2022                 ; or
2. the date you receive your Truth in Lending disclosures; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on or in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at
NETWORK CAPITAL FUNDING CORPORATION, NMLS#11712
7700 IRVINE CENTER DRIVE, #300
IRVINE, CALIFORNIA 92618

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of  JANUARY 20, 2022
(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

## I WISH TO CANCEL

---

Consumer's Signature                              Date
John C Heinnickel

---

## ACKNOWLEDGMENT OF RECEIPT

EACH OF THE UNDERSIGNED HEREBY ACKNOWLEDGES THE RECEIPT OF TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL.

---

John C Heinnickel                              Date

---

NOTICE OF RIGHT TO CANCEL/RESCISSION MODEL FORM H-8 (GENERAL)
15 U.S.C. 1635(a); 12 CFR 1026.23; Model Form H-8
NORTC.MSC  12/20/21

☆DocMagic

EXHIBIT "C"

# Track

## Track Your Telegram

| Your tracking number | ⏀ Track Now |
|---|---|

## Telegram Details

### Your telegram has been submitted already

- If you experienced problems with your credit card payment, please re-try here. You may wish to try a different payment processor this time.

- If you already paid but would like to change something in your telegram, please let us know the changes by replying to the e-mail receipt.

- If you wish to make a new submission, please press SEND NOW at the top of the page.

## Your tracking number: 941734

📅 **Date:** 2022-01-20 14:54:00

🌐 **Country:** USA

💵 **Price:** $53

Privacy - Terms

| ate | Status | Comment |
|---|---|---|
| 022-01-20 14:54 | Submited | |
| 022-01-21 12:48 | DELIVERED TO RECEPTION | |

© 1995-2017 SendTelegram.com – FCC Registration FRN0025305764

EXHIBIT "D"

# Telegram Order # 22551852

### Telegram details:

**Order date:** 2022-01-21 02:22 EST
**Destination:** IRVINE, CA / USA
**Service:** First Class PRIORITY Telegram

### Delivery estimation:

Same business day contract cancellation.



# Completed

## Great news! Your order is completed. The telegram was received at its destination.

## Details

Cancellation notification delivered on 1/21/2022 12:13 pm

Signed for by: Signature Release on file

Delivery depot: IRVINE, CA

Confirmation copy delivered on Mon, 1/24/2022 10:12 am

Contract cancellation time: 2022-01-21 02:22 EST

**You have ordered a proof of delivery with a certified telegram copy. Please allow up to 10 business days to receive these documents by mail.**

© International Telegram, All rights reserved.

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

E-FILED
8/26/2022 11:53 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV403725
Reviewed By: M. Dominguez
Envelope: 9817685

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Additional Parties Attachment Form is Attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOHN HEINNICKEL, JR.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Santa Clara County Superior Court<br><br>191 North First Street, San Jose, CA 95113 | **CASE NUMBER:**<br>*(Número del Caso):*    22CV403725 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Timothy A. Pupach, Esq. 3150 Almaden Expressway, Suite 204, San Jose, CA 95118 Tel: 408-971-9445

DATE:
*(Fecha)* 8/26/2022 11:53 AM    Clerk of Court     Clerk, by   M. Dominguez     , Deputy
    *(Secretario)*                   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Heinnickel, Jr. v. NETWORK CAPITAL FUNDING CORPORATION | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

[ ] Plaintiff    [x] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

NETWORK CAPITAL FUNDING CORPORATION, a Nevada Corporation; JPMORGAN CHASE BANK, a National Association; FEDERAL HOME LOAN MORTGAGE CORPORATION aka FREDDIE MAC; UNISOURCE NATIONAL LENDER SERVICES WEST, LLC, a Nevada Limited Liability Company; and All persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the Property adverse to Plaintiff's title, or any cloud on Plaintiff's title to the Property, and DOES 1 through 20, inclusive,

DEFENDANTS.

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Docusign Envelope ID: 9C7E0FE1-21DF-4125-9531-6D351997B73A

Timothy A. Pupach, Esq.   SBN 214044
Law Offices of Timothy A. Pupach
3150 Almaden Expressway, Suite 204
San Jose, CA 95118
Tel: 408-971-9445
Fax: 408-971-9444
Email: tim@pupachlaw.com

Attorney for Plaintiff, JOHN HEINNICKEL, JR.

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 11/25/2024 2:32 PM
Reviewed By: S. Rodriguez
Case #22CV403725
Envelope: 17421702**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| JOHN HEINNICKEL, JR. | ) **Case No. 22CV403725** |
| Plaintiff | ) |
| vs. | ) **FIRST AMENDED COMPLAINT FOR:** |
| | ) **(1) DAMAGES FOR FAILURE TO** |
| | ) **CANCEL AND RESCIND** |
| NETWORK CAPITAL FUNDING | ) **INSTRUMENT; AND** |
| CORPORATION, a Nevada Corporation; | ) **(2) VIOLATION OF CALIFORNIA** |
| JPMORGAN CHASE BANK, a National | ) **BUSINESS AND PROFESSIONS** |
| Association; and DOES 1 through 20, | ) **CODE SECTIONS 17200 ET SEQ.** |
| inclusive, | ) |
| DEFENDANTS. | ) |
| | ) |
| | ) |

TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

Plaintiff hereby alleges as follows:

**PARTIES**

1.     Plaintiff JOHN HEINNICKEL, JR. is an individual and owner of the real property located at 293 Monroe St, Santa Clara, California 95050 (Hereinafter, "Property") and

more particularly described as follows:

> Lot 146, as shown on that certain Map of Tract No. 1203, which Map was filed for record in the office of the recorder of the County of Santa Clara, State of California, in Book 44 of Maps, page(s) 42 and 43.

APN: 205-14-001

2. Defendant NETWORK CAPITAL FUNDING CORPORATION, a Nevada Corporation (Hereinafter, "NETWORK CAPITAL") located at 7700 Irvine Center Drive, #300 Irvine, California 92618 is in the business of lending money to borrowers for residential property from 1 to for 4 units in California. NETWORK CAPITAL was the lender at the time of the subject loan on January 17, 2022.

3. Defendant JPMORGAN CHASE BANK, A National Association, (Hereinafter, "CHASE") located at 1111 Polaris Parkway, Columbus, OH 43240 is in the business of lending money to borrowers for residential property from 1 to for 4 units in California. CHASE purchased the subject loan from defendant, NETWORK CAPITAL and began servicing the loan on January 31, 2022.

4. Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 20 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiffs are informed and believe and based on such information and belief allege that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiff will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

5. Plaintiff is informed and believe and based on such information and belief allege that Defendants and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or

employment in performing the acts and omitting to act as alleged herein.

6. Each of the Defendants named herein are believed to and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

7. Jurisdiction and venue are properly in the County of Santa Clara, California as the property is located there, the contract was entered into there and the Defendants were doing business in the County of Santa Clara, California

## I. INTRODUCTION TO FACTS

8. On or about January 17, 2022 in the city of Santa Clara, County of Santa Clara, California, plaintiff signed loan documents for a refinance of the property wherein Plaintiff was borrower and defendant NETWORK CAPITAL was lender. A true and correct copy of the Deed of Trust recorded on January 25, 2022 as Document No. 25225381 in Santa Clara County records is attached and incorporated in **Exhibit "A"**.

9. The major terms of the loan were as follows:

LOAN NUMBER 022111100146563

Escrow Number UNLS464522

Loan amount $202,500;

180 months term at interest rate of 2.375

$1338 payment per month with principal and interest;

Total payment of $1,912.77 per month with impounds included for property taxes and insurance;

Origination points to Defendant NETWORK CAPITAL $3,981.33;

Title - Settlement Fee to: Defendant UNISOURCE of $395.00 ;

Title - Lender's Title Insurance to UNISOURCE: of $300.00;

Title - Signing Fee to: UNISOURCE of $150.00;

Title - Recording Service Fee to UNISOURCE of $90.00;

Recording Fees to Santa Clara County of $275.00;

Homeowners Insurance Premium of $263.31;

County Property Tax impounded $3,130.40;

Appraisal fee to Core Valuation $720.00;

Per diem interest $146.95; and

Hazard insurance of $526.70.

10. Also included in the loan documents was a Notice of a Three-Day Right to Cancel the transaction, a true and correct copy of which is attached in **Exhibit "B"**. The cancellation requires a Notice of cancellation before midnight on the third business day after the date of the contract which is 12:00 A.M midnight of January 21, 2022.

11. Plaintiff in fact canceled the transaction in accordance with the Three-Day Right to Cancel on January 20, 2022 at 2:54 P.M. Pacific Standard Time by telegram using the servicer, sendtelegrm.com with tracking no. 941734. A true and correct copy of the confirmation is attached as **Exhibit "C"**. In an abundance of caution, Plaintiff again sent a telegram canceling the transaction on January 20, 2022 at 11:22 P.M. Pacific Standard Time by using the services of International Telegram Company. A true and correct copy of the confirmation of First-Class Telegram Order No. 22551852 is attached and incorporated as **Exhibit "D"**. The contract therefore was canceled twice before 12:00 A.M. Midnight of the third business day. California law provides that cancellation is effective as of the time it is sent by the borrower and not at the time received by the creditor. Despite receipt of the cancellation NETWORK CAPITAL proceeded with the refinance and funded the loan on January 24, 2022.

PLAINTIFFS' FIRST AMENDED COMPLAINT
4

Docusign Envelope ID: 9C7E0FE1-21DF-4125-9531-6D351997B73A

12. In addition, NETWORK CAPITAL's servicing time was also premature according to the FTC official interpretation of regulation Z, which requires delaying the start of initiation of servicing activity to allow at least a sufficient amount of time for the slowest permitted communication channel to deliver the message. Under Regulation Z it should be presumed by the servicer that a First-Class Mail postmarked letter would be sent instead of the fastest communication channel, which is a telegram. NETWORK CAPITAL should have waited to begin servicing and funding the loan at least as long as it would have taken to receive a regularly mailed message. Instead, it immediately began servicing on January 24, 2022.

13. The $202,500 loan was secured by a deed of trust that was recorded as Document No. 25225381 on January 25, 2022 with the Santa Clara County Clerk Recorder.

14. Plaintiff corresponded with NETWORK CAPITAL regarding the cancellation and showed them receipts for the telegram confirmation. NETWORK CAPITAL refused to cancel the transaction claiming that they did not receive the cancellation until after it was funded on January 24, 2022 without any basis or support for such a claim.

15. On or about January 31, 2022 CHASE purchased the loan from NETWORK CAPITAL, changed the servicer to defendant CHASE and the loan was assigned to CHASE.

16. On or about March 17, 2022 CHASE sold the loan to FREDDIE MAC and kept CHASE as the servicer.

17. On or about July 5, 2022 CHASE repurchased the loan from FEDDIE MAC and became the servicer and the owner of the loan.

**FIRST CAUSE OF ACTION FOR DAMAGES FOR FAILURE TO RESCIND AND CANCEL INSTRUMENT**

**Against All Defendants**

Docusign Envelope ID: 9C7E0FE1-21DF-4125-9531-6D351997B73A

18. Plaintiff incorporates and re-alleges Paragraphs 1 through 17 as though fully set forth at length herein.

19. Under The Truth In Lending Act (TILA) there are mandatory disclosures provided to borrowers which include the rights of rescission and cancellation. Here, Plaintiff was properly provided with the disclosure regarding the Three-day Right of Rescission and canceled the transaction and the instrument within the three-day period before midnight on the third day.

20. Plaintiff alleges that he has always had the ability to pay the loan but that he decided after careful evaluation, that the loans terms were not favorable.

21. On September 15, 2022 CHASE recorded and served a Notice of Default with the Santa Clara County Recorder's Office which began the foreclosure on plaintiff's property. A true and correct copy of the Notice of Default is attached and incorporated in **Exhibit "E"**.

22. On December 13, 2022 CHASE recorded a Notice of Trustee Sale with the Santa Clara County Recorder's Office appointing a sale date of January 18, 2023 at 9:00 A.M. A true and correct copy of the Notice of Trustee Sale is attached and incorporated in **Exhibit "F"**.

23. On January 6, 2023 Plaintiff made the payoff of the loan in full in the amount of $215,765.00 to CHASE in order to avoid foreclosure sale of his home. The pay-off included principal of $202,500 extra interest, escrow deposit, late fees and corporate advance fees of $13,265.

24. As a result of NETWORK CAPITAL and CHASE's failure to properly rescind the loan and cancel the transaction, NETWORK CAPITAL and CHASE have caused plaintiff to suffer damages to his credit rating as well as consequential and monetary damages to be proven at trial but exceeding the $25,000 jurisdictional limit.

25. Plaintiff alleges that the following charges and costs paid out-of-pocket in the transaction through escrow should be refunded to Plaintiff by defendants:

PLAINTIFFS' FIRST AMENDED COMPLAINT

6

Origination points to Defendant NETWORK FINANCIAL $3,981.33; Title - Settlement Fee to Defendant UNISOURCE of $395.00; Title - Lender's Title Insurance to UNISOURCE of $300.00; Title - Signing Fee to UNISOURCE of $150.00; Title - Recording Service Fee to UNISOURCE of $90.00; Recording Fees to Santa Clara County of $275.00; Homeowners Insurance Premium of $263.31; County Property Tax impounded $3,130.40; Appraisal fee to Core Valuation $720.00; Per diem interest $146.95; and Hazard insurance of $526.70 and all other finance charges accrued.

26. In addition to out-of-pocket costs, Plaintiff should be awarded damages paid by defendants for any and all points, broker fees, application and commitment fees, fees for a title search, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party.

27. In addition, CHASE and NETWORK CAPITAL, CHASE should be liable for Plaintiff's costs and attorney fees in accordance with 15 U.S.C. §1640 and Regulation Z, 12 CFR §1026 and per the promissory Note.

28. Plaintiff should also be entitled to punitive damages for NETWORK CAPITAL CHASE and FREDDIE MAC for recklessly and wantonly failing to rescind and cancel the note and deed of trust in order to punish and deter such acts in the future.

WHEREFORE, Plaintiff prays damages as hereinafter set forth.

**SECOND CAUSE OF ACTION AGAINST NETWORK CAPITAL AND CHASE FOR**

**UNFAIR BUSINESS PRACTICES**

**(Violation of California Business and Professions Code Sections 17200 et seq.)**

29. Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 37, inclusive, as though fully set forth herein.

Docusign Envelope ID: 9C7E0FE1-21DF-4125-9531-6D351997B73A

30. California Business & Professions Code Section 17200, et seq. prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

31. As more fully described above, NETWORK CAPITAL, CHASE and FREDDIE MAC as assignee's failure to cancel the loan transaction constitute acts and practices that are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date. Specifically, NETWORK CAPITAL engaged in deceptive business practices with respect to mortgage loan servicing and transacting for improper refusal to cancel the instruments in accordance with the Three-day right to Cancellation Disclosure.

32. In addition, NETWORK CAPITAL, and CHASE and FREDDIE MAC by assignment, sought and continue to seek collection from Plaintiff on the loan that are not legally due under California law without any right to do so.

33. Defendants also recorded a canceled instrument, namely, the deed of trust which constitutes executing and recording a false and misleading document.

34. The foregoing acts and practices have caused substantial harm to Plaintiff in that he has been charged amounts that he does owe and have. Defendants have falsely reported missed payments to the credit bureaus which has negatively effected Plaintiff's.

35. As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the defendants NETWORK CAPITAL, and CHASE and FREDDIE MAC by assignment, Plaintiff and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted charges and wrongful liens.

36. If not stopped by the Court NETWORK CAPITAL, and CHASE and FREDDIE MAC by assignment, will be unjustly enriched and should be enjoined from continuing in such practices pursuant to California Business & Professions Code§§ 17203 and 17204.

37.     Additionally, Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code §17200 and related sections.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## PRAYER

WHEREFORE, plaintiff prays for judgment as follows:

1.     For an Order Declaring the contract and loan entered into on January 17, 2022 by Plaintiff with NETWORK CAPITAL, and CHASE and FREDDIE MAC by assignment, has been and is rescinded and canceled in accordance with the TILA Disclosure before midnight on the third business day after executing the documents.

2.     For an Order voiding and canceling the deed of trust recorded January 25, 2022 with the Santa Clara County Clerk Recorder as Document No. 25225381.

3.     For an Order Declaring that Defendants return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the deed of trust.

4.   An award of all interest as allowed by law on all sums awarded to plaintiff;

5.   An award refunding all costs of the loan to Plaintiff, including but not limited to, all other finance charges accrued, as well as other charges, broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the NETWORK CAPITAL, paid directly to a third party, or passed on from the NETWORK CAPITAL to the third party.

6.   An award of the overpayment of $at least $13,265 for interest, late fees, corporate advances charged by defendants.

7.     An award of punitive damages against NETWORK CAPITAL and CHASE for their failure to rescind;

PLAINTIFFS' FIRST AMENDED COMPLAINT

9

8.  An award of all costs of suit including attorney fees to be paid by defendants to Plaintiff.

Dated: November 21, 2024

DocuSigned by:

*Timothy A. Pupach*

Timothy A. Pupach, Attorney for Plaintiff, JOHN HEINNICKEL, JR.

Docusign Envelope ID: 9C7E0FE1-21DF-4125-9531-6D351997B73A

**VERIFICATION**

I, JOHN HEINNICKEL, JR., am a plaintiff in this action; I have read the foregoing *FIRST AMENDED COMPLAINT FOR: 1) DAMAGES FOR FAILURE TO CANCEL AND RESCIND INSTRUMENT; AND 2) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.* and know the contents thereof. The foregoing Complaint is true of my own knowledge, except as to the matters stated in it on my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was made at San Jose, California on this 11/23/2024 .

Signed by:

John Heinnickel, Jr.

John Heinnickel, Jr.

PLAINTIFFS' FIRST AMENDED COMPLAINT

11

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Timothy A. Pupach, Esq.  SBN 214044<br>3150 Almaden Expressway, Suite 204, San Jose, CA 95118<br><br>TELEPHONE NO.: 408-971-9445    FAX NO. *(Optional):* 408-971-9444<br>E-MAIL ADDRESS: tim@pupachlaw.com<br>ATTORNEY FOR *(Name):* Plaintiff JOHN HEINNICKEL, JR. | **Electronically Filed<br>by Superior Court of CA,<br>County of Santa Clara,<br>on 8/26/2022 11:53 AM<br>Reviewed By: M. Dominguez<br>Case #22CV403725<br>Envelope: 9817685** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME: Civil Unlimited (Over $25,000)

CASE NAME:
JOHN HEINNICKEL, JR. v. NETWORK CAPITAL FUNDING CORPORATION, ET AL.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: |
|---|---|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000) | [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 22CV403725<br><br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [x] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* THREE (3)
5. This case [ ] is  [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 23, 2022

Timothy A. Pupach, Attorney for Plaintiff John Heinnickel, Jr
_____
(TYPE OR PRINT NAME)    ▶    _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
 Auto (22)–Personal Injury/Property Damage/Wrongful Death
 Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
 Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
 Product Liability *(not asbestos or toxic/environmental)* (24)
 Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
 Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
 Business Tort/Unfair Business Practice (07)
 Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
 Defamation (e.g., slander, libel) (13)
 Fraud (16)
 Intellectual Property (19)
 Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
 Other Non-PI/PD/WD Tort (35)
**Employment**
 Wrongful Termination (36)
 Other Employment (15)

**Contract**
 Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
 Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
 Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
 Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
 Eminent Domain/Inverse Condemnation (14)
 Wrongful Eviction (33)
 Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
 Commercial (31)
 Residential (32)
 Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
 Asset Forfeiture (05)
 Petition Re: Arbitration Award (11)
 Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
 Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
 Antitrust/Trade Regulation (03)
 Construction Defect (10)
 Claims Involving Mass Tort (40)
 Securities Litigation (28)
 Environmental/Toxic Tort (30)
 Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
 Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
 RICO (27)
 Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
 Partnership and Corporate Governance (21)
 Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

*John Heinnickel, Jr. v. Network Capital Funding Corporation, et al.*

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My address is 3070 Bristol Street, Suite 660, Costa Mesa, CA 92626.

On January 6, 2025, I served the foregoing document **NOTICE OF REMOVAL OF STATE COURT ACTION UNDER 28 U.S.C. §§ 1331, 1332(A) AND 1441(a)-(C)** on the interested parties in this action.

☒ by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

☒ **BY REGULAR MAIL:** I deposited the sealed envelope with the United States Postal Service with the Postage fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**BY THE ACT OF FILING OR SERVICE, THAT THE DOCUMENT WAS PRODUCED ON PAPER PURCHASED AS RECYCLED**

☐ **BY FACSIMILE MACHINE:** I Tele-Faxed a copy of the original document to the above facsimile numbers.

☐ **BY OVERNIGHT MAIL:** With the envelope deposited with FedEx and delivery fees thereon fully prepaid.

☐ **BY ELECTRONIC MAIL:** I served the foregoing document by electronic mail to the email address(es) listed on the service list.

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered by hand to the above addressee(s).

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on January 6, 2025, at Costa Mesa, California.

*/s/ Rhonda K. Viers*
Rhonda K. Viers

1
**PROOF OF SERVICE**

5459320.1

**SERVICE LIST**

*John Heinnickel, Jr. v. Network Capital Funding Corporation, et al.*

| | |
|---|---|
| Timothy A. Pupach, Esq.<br>Law Offices of Timothy A. Pupach<br>3150 Almaden Expressway, Suite 204<br>San Jose, CA 95118 | ***Attorney for Plaintiff, John Heinnickel, Jr.***<br><br>T: 408.971.9445<br>E: tim@pupachlaw.com |